F. A. Schutter et al., Respondents, *v.* Adams Express Company, Appellant.

February 19, 1878.

1. A package directed to the town of J. was received by defendant, an express company, which gave a receipt therefor, stipulating that its liability should cease upon delivering the goods to another carrier at the agency of defendant nearest the town of J. *Held*, in an action against defendant for the loss of the package, that the burden was on it to show that the agency at which the package was delivered to the other carrier was its nearest agency to the town of J. *Held, further*, that a letter of defendant's agent at the shipping point, addressed to "agent" at T., a point nearer J. than where the goods were delivered to the other carrier, directing the latter to trace the package, and reply on the same sheet, with the reply of the agent addressed, stating the loss by fire, and an indorsement on the same letter by the agent at the shipping point, asking the shipper to present claim, invoice, and receipt for settlement, were competent, as tending to show that defendant had an agency at T., and as tending to show that, when informed of the circumstances of the loss, defendant admitted its liability.

2. *Semble*, that where two express companies are running over one continuous route as common carriers, dividing profits, and employing one messenger, who remains in charge of the goods during the entire route, and who, by agreement between the companies, is considered the agent of one up to a certain point on the route, and as the agent of the other thence to the end, they cannot relieve themselves of their responsibility as common carriers by giving to the shipper a receipt such as was given in this case, and, in case of loss, claiming that the messenger ceased to be the receiving company's agent before the goods arrived at the end of his route. It is questioned whether, under the circumstances of this case, the second company was "another company," within the meaning of the receipt,

Appeal from St. Louis Circuit Court.

*Affirmed.*

S. M. Breckinridge, for appellant: Where there is no proof that the agent was acting within the scope of his authority, his declarations are not admissible against his principal. — 1 Greenl. on Ev., sec. 114. The question of authority is one of evidence. — *Slevin* v. *Rippey*, 46 Mo. 606. Where it clearly appears from the record that the verdict is against the evidence, against the law, and in flagrant disregard of the evidence and instructions, the

appellate court will set aside the verdict. — *Hart* v. *Leavenworth*, 11 Mo. 629; *Rose* v. *St. Charles*, 49 Mo. 509; *Court, etc.,* v. *Sprague*, 3 R. I. 205; *Rathbone* v. *Stanton*, 6 Barb. 141; *Sweany* v. *Bledsoe*, 8 Humph. 612. The positive testimony of an unimpeached and uncontradicted witness cannot be discredited or disregarded arbitrarily or capriciously by court or jury. — *Seibert* v. *Railway Co.*, 49 Barb. 583; *Kelly* v. *Jackson*, 6 Pet. 622; *United States* v. *Wiggins*, 14 Pet. 334.

M. J. SULLIVAN and DANIEL DILLON, for respondents.

BAKEWELL, J., delivered the opinion of the court.

This is an action against appellant, as a common carrier, for failure to deliver a box of goods received by defendant in St. Louis, to be shipped to Jefferson, Texas. The defence set up is, that defendant, by written contract, agreed to carry the box, not to Jefferson, Texas, but to the agency of defendant most convenient, or nearest, to Jefferson, Texas, and there to deliver it to other parties to complete the transportation; defendant to be relieved from all liability after its delivery to the other carrier, who was to be regarded, from the time of its receipt, as the agent, not of defendant, but of plaintiffs. There was a verdict and judgment for plaintiffs; and defendant appeals.

No instructions were asked by plaintiffs. The instructions asked by defendant were given, and no exception was taken. These instructions were to the effect that, if plaintiffs, at the time of delivering the package to defendant, agreed with defendant, by taking a receipt in which it was so stipulated, that the package was to be forwarded to the agency of defendant nearest or most convenient to Jefferson, Texas; and that, if said package was so delivered to any other express company or agent, said company or person so selected should be regarded, exclusively, as the agent of plaintiffs, and, as such, alone liable; and if the jury believe from the evidence that Moark was the nearest

point on defendant's route to Jefferson, Texas, and that defendant carried said package to Moark safely, and there delivered it to the Southern Express Company in good order, to complete the transportation, they must find for defendant.

It is claimed that there is no evidence to support the verdict, and the question before us is, whether or not there was any evidence from which the jury might fairly infer that Moark, Missouri, was, at the time of the loss of the package, the nearest point on defendant's route to Jefferson, Texas.

The defendant introduced evidence tending to show that the package was taken over the Iron Mountain and Southern Railroad, in charge of an express-messenger, from St. Louis to Little Rock; that this messenger was the agent of the defendant as far as Moark, and from Moark to Little Rock he was the agent of the Southern Express Company; that Moark is the last point south, and the nearest to Jefferson, Texas, to which the defendant carries goods over the route of this messenger; that the defendant and the Southern Express Company have an agreement by which freight is divided, and two sets of books are kept, — one for defendant to Moark, and from Moark south for the Southern Express; that the limit of each company's route is fixed by agreement with the railroads; that defendant's agent carried the package to Moark, where he " turned it over " to the Southern Express Company; and from Moark the same messenger, as agent of the Southern Company, carried the package to Little Rock, and delivered it to the agent of the Southern Express Company there. The package was burned in the hands of the Texas Express Company, at Arkadelphia, south of Little Rock, by an accident to the baggage-car. There was evidence that the package was billed through to Jefferson, Texas, and that the freight was to be collected there. Plaintiffs also put in evidence a letter called a " tracer," addressed by the agent of the defendant.

at St. Louis, with the answer written upon it, in the following words : " No. 3896.  Adams Express Company.  Western Division.  St. Louis, Mo., Dec. 24, 1874.  Mr. ——, agent, Texarkana, Texas.  On St. Louis way-bill to ——, No. 611, Dec. 16, 1874, is entered one case from Henry Bell & Son, marked F. A. Schutter & Son, Jefferson, Texas. Claim not received.  Why?  You will give this your immediate attention.  Enter your reply on this sheet in ink, and return it to me at St. Louis.  C. C. Anderson, agent."  Answer : " C. C. Anderson, agent, St. Louis. This box, 110 pounds, was burned up in the extra baggage-car near Arkadelphia, Ark., on night of 17th inst.  All contents burned.  The car caught fire from the engine. W. G. Albright."  On this paper was indorsed, " H. Bell & Sons.  Please make invoice of contents of this box; present it to this office, with original receipt, for settlement. C. C. Anderson, agent, St. Louis, 12-30-74."  It was shown that H. Bell & Sons were the shippers of the package in question, being the one described in the " tracer," and it was admitted that Anderson was defendant's agent at St. Louis.

We think that from this testimony it was permissible for the jury to draw the inference that defendant had an agency at Texarkana, which is admitted to be nearer Jefferson than Moark is.  The agent of defendent at St. Louis writes to an agent in Texarkana, in a tone of authority, directing him to trace the goods ; and on receiving a reply that they were destroyed south of Moark, at Arkadelphia, at once writes to the shipper to send in his account for settlement. . The only witness for plaintiffs, as to the question of Moark being the nearest point to Jefferson, says that it is the nearest point on the Iron Mountain and Southern Road, but that he knows nothing whatever as to any other routes that defendant may have ; and defendant introduced no witness to show that the agent at Texarkana, who obeys the order of the agent at St. Louis, was not in fact an agent of defendant.  He is shown

to have implicitly obeyed directions from the St. Louis agency of defendant in a matter concerning their business, and if this agent was not the agent of defendant, and they had no agent at Texarkana, it is incredible, in the state of the testimony, that defendant would not have introduced any positive testimony to that effect. No officer of the company is put on the stand, except the express-messenger; and he knows nothing whatever about the matter, of his own knowledge. As defendant undertook to show that it turned over these goods to another company at Moark, it was for it to show, affirmatively, that Moark was the nearest or most convenient point to which it carried goods on any of its several routes.

But, had it clearly appeared in evidence that the agency at Texarkana was not an agency of defendant's company, it might be seriously questioned whether, on defendant's own showing, its responsibility for these goods ceased at Moark. The question does not necessarily arise in this case, as presented. But we may remark that it would be a dangerous doctrine to hold that a carrier can relieve himself of his responsibility in the manner suggested by defendant's theory of the law of this case. On that theory, a responsible company, doing a large business as common carriers, and to whom shippers would willingly intrust goods on account of their known responsibility, might make an arrangement that the express-messenger at some imaginary point, — say the county line, — should become the agent of another company. Shippers would know nothing of such an arrangement, but would find, to their astonishment, that, when a heavy loss occurred, the goods, though in charge of the same express-messenger throughout the entire route, had ceased to be in the custody of the carrier to whom they were delivered, long before they arrived at the destination marked on the goods and indicated in the receipt given by the carrier. The carrier receipts for the goods to be carried to Jefferson, Texas, but provides that he shall not be liable

beyond the most available and nearest point at which the carrier has an agent, and the messenger in charge of the goods may cease to be the agent of the carrier who received them, and become the agent of another carrier, unknown to the shipper, at some point privately agreed upon by the carriers themselves. It may well be questioned whether the Southern Express Company was shown to be " another company" within the meaning of the contract, and whether it was an independent agent, rather than a copartner or joint contractor with defendant in the matter of the delivery of these goods, both companies running together as common carriers over one continuous route, employing the same agents, and dividing the profits and expenses according to a tariff established between themselves. The arrangement by which the messenger of the Adams Express Company, when arrived at a certain geographical line, becomes the messenger of the Southern Express Company, or *vice versa*, and " turns over " goods in his charge, received by him in one capacity, to himself in another capacity, is one which the shipper may find it difficult to understand, and to which he is not asked to assent. He certainly had no notice of it in this case, and says that when he took a receipt from the Adams Express Company for goods directed to Jefferson, Texas, he supposed that the Adams Express Company would carry them over the entire route, and itself deliver them to the consignee. That contracts by which a common carrier attempts to limit the liability which the law attaches to his calling, which seem to have no consideration to support them, and which are, as it were, extorted from the shipper in the hurry of business and from the necessity of his position, should be held valid, seems an anomaly in itself; but it is believed that the courts will advance no further in the direction of releasing the carrier from the responsibility which the law, in the interest of commerce, has fixed upon him.

The instructions in the present case were such as to give

defendant, certainly, no ground of complaint, and we do not think it could be said that there was no evidence to support the verdict.

It is objected that the indorsement on the tracer, requesting Bell & Co. to send in their claim for adjustment, was incompetent, and should have been excluded. It was admitted that C. C. Anderson was agent of defendant at St. Louis; and the indorsement, we think, was competent as tending to show that defendant, as soon as it ascertained the precise manner and place of the loss, admitted its liability. It is said by counsel for appellant, in his brief, that the evidence shows that the offer was made during negotiations for an amicable settlement. But the record does not bear out this statement. The testimony is that the shipper demanded of defendant the full value of the goods, and was directed by defendant to make affidavit and proof of loss, which he did on receiving from defendant the tracer and indorsement in evidence.

The judgment is affirmed. All the judges concur.